IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES TURNER,

                Plaintiff,

v.

TONY ASHWORTH, CHRISTINE PROCKNOW,
MICHAEL MEISNER, JOANNE LANE,
and CHARLES FACKTOR,

                Defendants.[1]

OPINION and ORDER

17-cv-363-jdp

---

      Pro se plaintiff and prisoner James Turner is proceeding on claims that prison officials at Columbia Correctional Institution improperly prohibited his son from visiting him, in violation of his First Amendment right to familial association. Before the court are Turner's motion for assistance in recruiting counsel, Dkt. 15, motion to compel, Dkt. 16, and motion to supplement his complaint, Dkt. 20, as well as defendants' motion for summary judgment. Dkt. 22. I will deny all of Turner's motions because I am not persuaded Turner needed the assistance of counsel to litigate this case, Turner has not shown that defendants failed to respond to legitimate discovery requests, and Turner's motion to supplement his complaint seeks to add allegations that do not support a claim for relief. I will grant defendants' motion for summary judgment because the record shows that defendants had a legitimate penological purpose for denying Turner's son's visitation request.

---

[1] Turner also named Charles Cole as a defendant, but the Attorney General's office notified the court that Cole is deceased. I will dismiss Cole as a defendant. Turner was given until January 8, 2018 to file a motion to substitute Cole's estate as a defendant, Dkt. 11, but Turner did not to do so.

# UNDISPUTED FACTS

In late April 2011, Turner's son, Jamie Turner, submitted an application to visit his father at Columbia Correctional Institution, where Turner was incarcerated. Dkt. 26-2. (I will refer to plaintiff James Turner as "Turner," and will refer to his son as "Jamie.") Pursuant to DAI Policy 309.06.01, Dkt. 26-1, which sets forth procedures for visitation requests, prison staff performed a criminal background check on Jamie on April 28, 2011. The application and results of the background check were forwarded to defendant Christine Procknow, who was Turner's assigned social worker. Procknow noted that the background check contained 12 "red flags" and concerns related to Jamie's potential association with "violent gang or terrorist organization member[s]." Dkt. 26-3.

Procknow forwarded the information to Turner's unit manager, defendant Tony Ashworth. After reviewing the results of the background check, Ashworth decided that Jamie's application should be denied under Wis. Admin. Code § DOC 309.08(4)(d), which states that the warden may deny visitation rights if there are "reasonable grounds to believe the visitor has attempted to bring contraband into any penal facility . . . or that the visitor otherwise poses a threat to the safety and security of visitors, staff, inmates or the institution." Ashworth signed the denial on May 4, 2011, acting as the warden's designee. Turner and his son Jamie were provided copies of a visitor denial form, DOC-161, which stated that Jamie's application had been denied under § 309.08(4)(d), but did not provide any specific details about why the warden or Ashworth thought § 309.08(4)(d) applied. Dkt. 26-4. The denial form advised Turner and Jamie of Jamie's right to appeal to the warden and Turner's right to appeal through the inmate complaint review system and resubmit Jamie's name for reconsideration after six months. *Id.*

Turner filed an inmate complaint challenging the denial of Jamie's visitation application. Defendant Joanne Lane, an institution complaint examiner, recommended dismissal to defendant Michael Meisner, the warden. Meisner reviewed Jamie's background check information, concluded that Ashworth properly denied the visitation application, and dismissed Turner's complaint. Turner appealed Meisner's dismissal to the corrections complaint examiner, and defendant Charles Facktor recommended the appeal be dismissed. Facktor's dismissal recommendation was accepted as the decision of the secretary.

Neither Turner nor Jamie reapplied for visits after April 2011. Jamie was shot and killed in October 2012. Before Jamie's death, Turner was not prohibited from communicating with Jamie through the U.S. Postal Service or by telephone.

Sometime after Jamie's death, Turner spoke with Ashworth about criminal activities that Jamie had been involved in before his death. In February 2014, Turner sent an interview/information request to Ashworth stating:

> Mr. Ashworth: The conversation we had about my son was being investigated, that's why he could not be put on my visit list. The person who had my son selling drugs for him is still out there! I know something about his drug dealing. Help me put this man in prison, <u>federal</u>.

Dkt. 27-1. Ashworth responded to Turner's information request in person and, after speaking to Turner, provided information to a Milwaukee detective for follow-up.

ANALYSIS

Turner is proceeding on a claim that defendants violated his First Amendment right to familial association by denying Jamie's visitation application on the unsubstantiated premise

3

that Jamie had brought drugs or contraband into a prison. Before turning to the merits of Turner's First Amendment claim, I will address his three outstanding motions.

First, Turner filed a motion for assistance in recruiting counsel. Dkt. 15. In determining whether to recruit counsel for Turner, the relevant question is whether the complexity of the case exceeds his ability to litigate it. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). Turner contends that he needs counsel because this case is complicated, his imprisonment has restricted his ability to litigate, and a lawyer would be more skilled at cross-examining witnesses. He also states that he has "never before been a party to a civil legal proceeding," which is false, because Turner has been party to at least five civil cases in this court alone. *Turner v. Hamblin*, 12-cv-179-bbc; *Turner v. Hamblin*, 12-cv-699-bbc; *Turner v. Rataczak*, 13-cv-48-jdp; *Turner v. Mashak*, 15-cv-23-jdp; *Turner v. City and County of Racine*, 16-cv-837-jdp. Because the motion appears to be a form motion that is not specific to Turner's case, I will give Turner the benefit of the doubt and assume this motion was prepared by another prisoner who was unaware of Turner's prior cases. However, I am not persuaded that Turner needed counsel to litigate this case. This case is not complex. Turner is proceeding on a single claim regarding his son's visiting application. Regardless whether Turner had counsel, his claim would fail because, as discussed below, the evidence shows that defendants' denial was justified by legitimate penological interests.

Turner's second motion is a request to amend his complaint to add a claim that defendants violated his due process rights by failing to provide him with written explanation as to why they denied Jamie's visitor application. Dkt. 20. Specifically, Turner says DAI Policy 309.03.01(g)(7) requires prison officials to provide to inmates a narrative explanation for any visitor denial on form DOC-2427. Turner argues that defendants' failure to comply with the

4

policy amounts to a denial of Turner's right to procedural due process. But Turner is mistaken. A government official's failure to follow a state-created procedure does not violate the federal constitution. *Lafayette Linear v. Vill. of Univ. Park, Illinois*, 887 F.3d 842, 844 (7th Cir. 2018). Accordingly, I am denying Turner's motion to amend because defendants' failure to provide him a DOC-2427 form does not amount to a due process violation.

Third, Turner filed a motion to compel responses to his discovery requests. Dkt. 16. Turner seeks to compel defendants to provide (1) Jamie Turner's criminal records from the Washington state; (2) an incident report from a Milwaukee detective; (3) form DOC-2427 relating to Jamie's visitor application; and (4) documents regarding Ashworth's misconduct at Columbia Correctional Institution. Defendants have responded that they do not have documents in their possession responsive to these requests and never have. I cannot compel defendants to provide documents they do not possess. Therefore, Turner's motion to compel will be denied.

Turning to the merits of Turner's First Amendment claim, the question is whether defendants violated Turner's constitutional right to familial association by denying his son's request to visit him. The Supreme Court has assumed that prisoners retain some right to intimate association while incarcerated, even though the "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). *See also Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989) (assuming that prisoners retain limited constitutional right to associate with family members). In *Overton*, the Court held that the constitutionality of a prison policy restricting visitation privileges depended on whether the policy was reasonably related to legitimate penological interests. *Overton*, 539 U.S. at 132. To

5

determine whether the policy impinged on the prisoner's constitutional rights, the Court applied four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987): whether there is a "valid, rational connection" between the restriction and a legitimate government interest; whether alternatives for exercising the right remain to the prisoner; what impact accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Id*. at 89–91.

After applying the four *Turner* factors to defendants' decision to deny Jamie's visitor application, I conclude that the decision was reasonably related to a legitimate penological interest. As for the first factor, defendants denied Jamie's application because his background check flagged him for association with gang members or terrorist activity. Defendants' determination that it would be dangerous to allow a visitor with gang or terrorist connections into a maximum-security prison is related to the legitimate penological interest of safety and security.

As for the second factor, Turner had alternative means to maintain a relationship with his son. He was not precluded from calling or writing letters to Jamie. *See Overton*, 539 U.S. at 135 (inmates' ability to communicate with persons outside the prison by letter and telephone provide sufficient alternatives where in-person visitation is not permitted).

The third and fourth factors also support defendants' denial. The Supreme Court and the Court of Appeals for the Seventh Circuit have held that the third factor weighs in the government's favor if allowing visitation would require the prison to allocate additional resources to ensure safety. *Overton*, 539 U.S. at 135 ("Accommodating respondents' demands would cause a significant reallocation of the prison system's financial resources and would impair the ability of corrections officers to protect all who are inside a prison's walls.");

*Stojanovic v. Humphreys*, 309 F. App'x 48, 52 (7th Cir. 2009) ("accommodating [prisoner's] interest would substantially impact prison resources by steering resources toward the children's safety and therefore hindering the guards' ability to protect other visitors and inmates."). In this instance, I have no reason to doubt defendants' contention that permitting a person with gang associations or terrorist connection in a maximum-security facility's visiting room would expose guards, inmates, and other visitors to unnecessary danger and would require allocating additional security staff to the visiting area during his visits. As for the fourth factor, defendants argue that there are no alternatives to the visitation restriction that could be implemented easily, and Turner has not proposed any easily implemented alternatives.

Turner's only argument in opposition to defendants' summary judgment motion is that defendants' proffered reason for denying Jamie's visitor application is false. Turner says that defendants did not deny Jamie's application because of the results of any background check showing potential association with gang members or terrorist groups, but because they erroneously believed that Jamie had attempted to bring drugs or contraband into a prison in the past. He argues that because defendants had no evidence to support their false belief that Jamie had brought drugs or contraband into a prison, they had no legitimate basis for denying his visitor application.

Turner points to two pieces of evidence, but neither supports his argument. First, he points to the visitor denial form that cites Wis. Admin. Code § DOC 309.08(4)(d) as the basis for denying Jamie's application, and he argues that the cited regulation mentions bringing drugs or contraband into an institution. But Turner ignores the second part of the regulation, which permits the warden to deny a visitor if there are "reasonable grounds to believe . . . that the visitor otherwise poses a threat to the safety and security of visitors, staff, inmates or the

7

institution." Defendants concluded reasonably that Jamie's potential association with gang members or terrorist organizations "pos[ed] a threat to the safety and security of visitors, staff, inmates or the institution."

Second, Turner points to the document submitted by defendants showing the results of Jamie's background check, Dkt. 26-3, and he argues that the document is fake. Turner says that the document is obviously fake because it "looks like it has been copied with lines on it" and the "time" has been intentionally deleted from the top. These arguments are not persuasive. There is nothing in the document that appears to be altered. The document is dated April 28, 2011, and includes the results of a background check from several sources. Turner's concern about the "TIME" notation at the top of the document is misplaced. The "TIME" at the top of the document appears to refer to the name of program through which the background check was performed. (My own visit to the website identified on the document on December 17, 2018 confirmed that the secure website is part of the Department of Justice Crime Information Bureau's "eTIME" system.) Therefore, Turner has identified no reason to doubt defendants' proffered reason for denying Jamie's visitor application.

Because defendants' denial of Jamie's visitor application was reasonably related to legitimate penological interests, defendants are entitled to summary judgment on Turner's First Amendment claim.

ORDER

IT IS ORDERED that:

1. Defendant Charles Cole is DISMISSED from this case.

2. Plaintiff James Turner's motion for assistance in recruiting counsel, Dkt. 15, motion to compel, Dkt. 16, and motion to supplement complaint, Dkt. 20, are DENIED.

3. Defendants' motion for summary judgment, Dkt. 22, is GRANTED.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 20, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge